NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KEVIN CHURCH,<br><br>            Plaintiff,<br><br>   v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>            Defendant. | Civil Action No. 19-12409 (SDW)<br><br>**OPINION**<br><br>April 13, 2020 |

**WIGENTON,** District Judge.

Before the Court is Plaintiff Kevin Church's ("Plaintiff") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner") with respect to Administrative Law Judge Dennis O'Leary's ("ALJ O'Leary") denial of Plaintiff's claim for disability insurance benefits under the Social Security Act. This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Venue is proper pursuant to 28 U.S.C. § 1391(b). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, this Court finds that ALJ O'Leary's factual findings are supported by substantial evidence and that his legal determinations are correct. Therefore, the Commissioner's decision is **AFFIRMED**.

**I.**    **PROCEDURAL AND FACTUAL HISTORY**

    **A. Procedural History**

On September 17, 2015, Plaintiff filed a Title II application for disability insurance benefits based on his Ehlers-Danlos Syndrome ("EDS"), fatigue, anxiety, attention deficit hyperactivity

1

disorder ("ADHD"), and asthma.[1] (Transcript Record ("Tr.") 73, 86-87.) The Social Security Administration denied Plaintiff's application on January 28, 2016, and again on reconsideration on May 4, 2016. (Tr. 85, 99.) Plaintiff appealed, and ALJ O'Leary held a hearing on March 8, 2018. (Tr. 35-72.) On April 9, 2018, the ALJ issued a decision that Plaintiff was not disabled between May 15, 2012, the alleged onset date, and December 31, 2017, the date last insured. (Tr. 15-30.) Plaintiff requested that the Appeals Council review ALJ O'Leary's decision, and the Appeals Council denied that request on March 13, 2019, making the ALJ's decision the final decision of the Commissioner. (R. 1-6, 175-76.) Plaintiff now requests that this Court reverse the Commissioner's decision and either declare that Plaintiff is entitled to disability beginning May 15, 2012 or remand for a new hearing.

### B. Factual History

Plaintiff is fifty-one years old and currently lives in New Jersey. (*See* Tr. 73.) The record demonstrates that Plaintiff received minimal treatment from 2013 to 2017 for the medical issues associated with his disability claim. (Tr. 410, 561.) The following is a summary of the evidence.

#### 1. EDS and Asthma

In April 2015, Plaintiff expressed to Michele Gilsenan, D.O., ("Dr. Gilsenan") that he believed he had EDS. (Tr. 489.) In September 2015, Dr. Gilsenan confirmed that Plaintiff had EDS but that it was stable. (Tr. 484.) Dr. Gilsenan reported that Plaintiff had no muscle aches or weakness, no joint pain, and no back pain. (Tr. 485.)

---

[1] EDS is a genetic connective tissue disorder that is characterized by joint hypermobility, skin hyperextensibility, and tissue fragility. Symptom severity varies from person to person. There is no cure for EDS, but it can be managed through physical therapy and medication. *See* https://www.mayoclinic.org/diseases-conditions/ehlers-danlos-syndrome/symptoms-causes/syc-20362125.

In January 2016, Plaintiff underwent a lumbar spine x-ray that revealed no fractures and minimal lumbar osteophytes and sclerosis of the joints. (Tr. 510.) That same month, Plaintiff reported to Francky Merlin, M.D., ("Dr. Merlin") who opined that Plaintiff was able to sit, stand, walk, and crouch. (Tr. 504.) Plaintiff stated that he had been diagnosed with EDS four years prior, had pain in his right elbow, and had hypermobility in his joints. (Tr. 502.) Plaintiff also stated that he had been diagnosed with asthma as a child but had never been hospitalized and continued to use his Ventolin inhaler. (Tr. 502.) Plaintiff underwent a Spirometric Pulmonary Function Test that showed that he had no acute respiratory distress and no wheezing. (Tr. 505.)

In April 2017, Plaintiff saw Michael Beams, D.O., ("Dr. Beams") for the first time. Dr. Beams reported that although Plaintiff had hypermobility in his joints, he did not have any abnormalities in his bones or muscles. (Tr. 535.) Plaintiff next saw Dr. Beams in August 2017, to ask him to complete disability forms. (Tr. 529.) Although Dr. Beams opined that Plaintiff had no bony abnormalities and demonstrated normal movement, with the exception of the hypermobility in his joints, he concluded that Plaintiff was "totally disabled." (Tr. 531.) Accordingly, Dr. Beams completed the disability form diagnosing Plaintiff with EDS Type 3 (hypermobility) and permanent disability. (Tr. 546.)

In October 2017, Plaintiff reported to Eric Lieberman, M.D., ("Dr. Lieberman") seeking "evidence for [his] Social Security Disability hearing." (Tr. 570, 573, 576.) After two visits, Dr. Lieberman opined that Plaintiff had a tender lumbar and thoracic spine; however, Plaintiff's skin was normal and his joints were unremarkable. (Tr. 570.) Nonetheless, Dr. Lieberman affirmed that Plaintiff had hypermobile EDS and completed a disability form provided by Plaintiff, checking a box to indicate that Plaintiff was "totally disabled." (Tr. 574, 556.) Plaintiff next saw

Dr. Lieberman in December and completed a questionnaire admitting he could dress himself, complete daily chores, and exercise with only mild pain in his right fingers and back. (Tr. 561.)

### 2. ADHD and Anxiety Disorder

In August 2013, Plaintiff complained to Jorge Quintana, M.D., ("Dr. Quintana") that he was overwhelmed by work and believed he had ADHD. (Tr. 410.) Dr. Quintana agreed and began seeing Plaintiff every two weeks and treating him with medication. (Tr. 411, 517.) Dr. Quintana noted that Plaintiff had a good memory and listened to audiobooks, but needed more social activities. (Tr. 411.) He also noted that Plaintiff was "doing well" on ADHD medication and assessed a Global Assessment of Functioning (GAF) score between 60 and 70, indicating mild symptoms but "generally functioning pretty well." (Tr. 517.)

In October 2015, Dr. Quintana completed a social security disability psychiatric report in which he confirmed that Plaintiff had ADHD. (Tr. 493-99.) Dr. Quintana noted that Plaintiff had difficulty finishing projects and a poor attention span, but that he was alert and oriented with mild anxiety. (Tr. 495.) Dr. Quintana further opined that Plaintiff had no limitations with understanding, memory, or social interactions. (Tr. 497.) Dr. Quintana acknowledged that Plaintiff had limitations sustaining concentration, persistence, and adaptation, but was "better with meds" and would continue to improve. (Tr. 497-98.)

In April 2017, Plaintiff reported to Dr. Beams seeking a medication refill. (Tr. 533.) Dr. Beams noted that Plaintiff wanted to continue treatment for ADHD with his office instead of with Dr. Quintana. (Tr. 534.) Nonetheless, Plaintiff asked Dr. Quintana to complete a checkbox disability form in July 2017. (Tr. 537-44.) On the form, Dr. Quintana noted that Plaintiff had a limitation in daily activities but did not "suffer from a complete inability to function independently" outside his home. (Tr. 537-39.) In fact, Dr. Quintana noted that Plaintiff could

4

function outside a supportive living arrangement. (Tr. 543.) However, Dr. Quintana checked a box indicating that Plaintiff was disabled due to poor concentration and an inability to handle stress. (Tr. 539, 544.)

### 3. State Agency Expert Opinions

In December 2015, state agency psychologist Sharon Flaherty, Ph.D., ("Dr. Flaherty") conducted a Medically Determinable Impairment ("MDI") review of Plaintiff's record evidence and opined that Plaintiff could do simple work and, with medication, might still be able to work as an attorney. (Tr. 78.) Dr. Flaherty stated that Plaintiff had mild limitations in conducting daily activities and social functioning, and only moderate limitations in maintaining concentration, persistence, or pace. (*Id.*) Similarly, on reconsideration on May 3, 2016, Carmen Pineiro, Ph.D., ("Dr. Pineiro") reviewed the record evidence and affirmed that Plaintiff was not mentally disabled. (Tr. 91.)

In January 2016, Mohamed Abbassi, M.D., ("Dr. Abbassi") conducted a Residual Functional Capacity ("RFC") assessment of the record evidence and opined that Plaintiff was not physically disabled and could perform light work. (Tr. 79, 83.) Although Plaintiff complained of asthma and EDS, Dr. Abbassi found no record evidence of wheezing or hospitalization, and his physical exams were normal. (Tr. 79.) Similarly, on reconsideration in April 2016, Joseph Udomsaph, M.D., ("Dr. Udomsaph") reviewed the record evidence and affirmed that Plaintiff was not physically disabled. (Tr. 94.)

### 4. Hearing Testimony

At the administrative hearing, ALJ O'Leary heard testimony from Plaintiff and Vocational Expert Josiah Pearson ("VE Pearson"). (Tr. 35-73.) Plaintiff, represented by counsel, testified that he suffered from multiple ailments, including anxiety, depression, and ADHD, which made it

difficult for him to complete tasks. (Tr. 42.) Plaintiff testified that although he had sought out counseling, he was not currently being treated, nor had he ever been hospitalized for his anxiety. (Tr. 44-45.) Plaintiff also testified that he used an inhaler to treat his asthma. (Tr. 49-50.) Finally, Plaintiff testified that his EDS caused him pain if he did not sit and rest, but that he continued to perform daily activities around the home and attend functions with his wife. (Tr. 46, 52, 56-57, 62.)

Following Plaintiff's testimony, the ALJ asked VE Pearson a series of hypotheticals based on Plaintiff's testimony and the evidentiary record. (Tr. 68-70.) ALJ O'Leary asked VE Pearson if an individual with Plaintiff's background could find work that was sedentary and low-stress. (Tr. 68.) VE Pearson testified that although Plaintiff could not perform his previous work as an attorney, he could perform jobs such as information clerk, dual sorter, and document preparer. (Tr. 69-70.) ALJ O'Leary next asked if jobs existed in the national economy that were also simple and repetitive, to which VE Pearson stated that document preparer, charge account clerk, and order clerk were available. (*Id.*) Lastly, ALJ O'Leary asked if jobs existed that allowed an individual to be off-task for 15 percent or more of the time or take off three or more days a month for medical reasons, to which VE Pearson responded no. (Tr. 71.)

## II.  LEGAL STANDARD

### A. Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted). Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (internal quotation marks omitted) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (internal quotation marks omitted) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131

(E.D. Pa. 1976)). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984) (citations omitted).

### B. The Five-Step Disability Test

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . ." 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480. If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as

work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rule ("SSR") 85-28, 96-3p, 96-4p. An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d). If, however, the claimant's impairment or combination of impairments

does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ considers all impairments in this analysis, not just those deemed to be severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p. After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant is able to perform his or her past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, at step five the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## III. DISCUSSION

ALJ O'Leary's decision concluded that Plaintiff was not disabled between May 15, 2012 (the alleged onset date) and December 31, 2017 (the date last insured). (Tr. 15-30.) At step one, ALJ O'Leary found that Plaintiff had not engaged in substantial gainful employment between those dates. (Tr. 17.) At step two, he found that Plaintiff suffered from EDS, asthma, anxiety disorder, and ADHD during the relevant time period. (*Id.*)

At step three, however, ALJ O'Leary concluded that Plaintiff's impairments did not meet or medically equal the severity of the Listings for these respective impairments under 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 19.) Although there is no specific Listing for EDS, the ALJ considered multiple other Listings in conjunction with the symptoms of EDS, including Listing 12.02 (Neurocognitive Disorders), and found that Plaintiff had only moderate limitations in broad areas of functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself (Tr. 19-21). The ALJ next assessed Plaintiff's RFC and found that through the date last insured, Plaintiff had the RFC to perform sedentary work with the following additional limitations: no heights, no heavy machinery; no working in environments with undue concentrations of dust, smoke, fumes, pulmonary irritations, or temperature extremes; and only simple, repetitive, low stress jobs with a reasonable, predictable day to day routine. (Tr. 22.)

At step four, ALJ O'Leary accepted the testimony of VE Pearson that Plaintiff was unable to perform his past relevant work as a lawyer. (Tr. 28.) However, at step five, based on his RFC and the VE's testimony, ALJ O'Leary found that Plaintiff could perform other work in the national economy including simple and sedentary occupations such as charge account clerk and order clerk

11

(food and beverage). (Tr. 29.) As such, ALJ O'Leary determined that Plaintiff was not disabled from May 15, 2012 through December 31, 2017. (Tr. 29-30.)

On appeal, Plaintiff seeks reversal of the Commissioner's decision and contends that (1) the ALJ did not consider Plaintiff's EDS with respect to the Listings, (2) the ALJ's findings are not supported by substantial credible evidence, and (3) the ALJ improperly ignored the VE's testimony. (D.E. 13 at 12-30.) This Court considers each argument in turn.

A.

Plaintiff argues that although there is no specific Listing for EDS, it should still be considered in the ALJ's findings. (D.E. 13 at 19.) Specifically, Plaintiff challenges ALJ O'Leary's finding that Plaintiff's EDS symptoms did not meet Listing 12.02 (Neurocognitive Disorders). (D.E. 13 at 20-22.)

However, ALJ O'Leary did take into consideration Plaintiff's EDS and found that his impairments were "managed conservatively and no aggressive treatments were recommended or anticipated." (Tr. 18.) Furthermore, to meet Listing 12.02, a claimant must prove that he meets both "paragraph A" criteria and either "paragraph B" or "paragraph C" criteria. *See* 20 C.F.R. 404, Subpart P, Appendix 1 § 12.02. As discussed below, substantial evidence supports the ALJ's finding that Plaintiff failed to satisfy either "paragraph B" and "paragraph C" criteria. (Tr. 20-22.)

First, "paragraph B" requires one extreme or two marked limitations in: 1) understanding, remembering or applying information; 2) difficulties in interacting with others; 3) deficiencies in concentration, persistence, or pace; or 4) adapting or managing oneself. *See* 20 C.F.R. 404, Subpart P, Appendix 1 § 12.02.B. ALJ O'Leary found that Plaintiff had only moderate, not marked, limitations in these categories. (Tr. 20-21.) In reaching his findings ALJ O'Leary took into consideration that Plaintiff was able to follow instructions, complete tasks, and perform

household chores. (Tr. 20.) Plaintiff was active and interacted with others on a regular basis while picking up groceries, attended social functions with his wife, and maintained hobbies like archery. (Tr. 21.) ALJ O'Leary also considered Plaintiff's testimony that, depending on his interest level, he could pay attention for a long time. (*Id.*) Moreover, ALJ O'Leary found that Plaintiff was able to practice proper hygiene, cook, and perform household work. (*Id.*) Thus, the ALJ's determination that Plaintiff did not meet paragraph B" criteria is supported by the substantial evidence.

Second, to satisfy "paragraph C", the mental disorder must be "serious and persistent," have been documented for at least two years, and be supported by evidence of both medical treatment and marginal adjustment. *See* 20 C.F.R. 404, Subpart P, Appendix 1 § 12.02.C. Plaintiff alleges he is unable to function outside of the home without substantial psychosocial support and that he is only able to function in a "highly structured environment with minimal ability to adjust to change." (D.E. 13 at 20-22.) However, the record evidence showed that Plaintiff was able to perform chores, cook for his wife, walk the dog, and complete errands. (Tr. 21.) ALJ O'Leary also found that there had not been any changes or increased demand that exacerbated or deteriorated Plaintiff's functioning. (Tr. 22.) Moreover, Dr. Quintana opined that Plaintiff did not have a complete inability to function outside of his home. (Tr. 520.) Because the record fails to present a evidence of disorder that is "serious and persistent" and required medical treatment that produced only marginal adjustment, this Court finds that there is substantial evidence to support the ALJ's determination that Plaintiff did not meet paragraph C criteria. Therefore, the ALJ's determination that Plaintiff did not meet Listing 12.02 is supported by the substantial evidence.

B.

Plaintiff also argues that the ALJ's RFC determination was not based on substantial evidence and did not give sufficient weight to Plaintiff's subjective complaints and his treating physicians' opinions. (*See* D.E. 13 at 22-23.)

However, ALJ O'Leary did consider Plaintiff' allegations and, in doing so, he determined that they were not consistent with the record evidence. (Tr. 28.) Plaintiff's statements and descriptions of his ailments were not sufficient alone to establish a physical impairment without supporting medical evidence. 20 C.F.R. § 404.1529(a). An ALJ may discount a claimant's allegations of disabling limitations when the ALJ finds that record evidence, including objective medical evidence, treatment records, statements about daily activities, or other relevant evidence, fails to support those allegations. *See* 20 C.F.R. § 404.1529(c)(3). Without additional supporting evidence in the record, ALJ O'Leary was permitted to find that Plaintiff's EDS ailments did not significantly limit his ability to perform basic work activities. (*Id.*)

ALJ O'Leary also considered and found that Plaintiff's treating physicians' "checkbox" opinions were generally not consistent with their treatment notes. (*See* Tr. 26-27.) For example, Dr. Beams opined that Plaintiff had no bony abnormalities and demonstrated normal movement, but concluded that Plaintiff was "totally disabled." (Tr. 531.) Similarly, Dr. Lieberman opined that Plaintiff was totally disabled after finding that Plaintiff's skin was normal and joints were unremarkable. (Tr. 570.) "[T]he Third Circuit has consistently found that 'the opinion of a treating physician does not bind the ALJ on the issues of functional capacity.'" *Ciccone v. Comm'r of Soc Sec.*, Civ. No. 14-2005, 2015 WL 727927, at *6 (D.N.J. Feb. 18, 2015) (quoting *Brown v. Astrue*, 649 F.3d 193, 197 n.2 (3d Cir. 2011)). "An ALJ can reject a treating physician's opinion . . . where the opinion is . . . inconsistent with other substantial evidence of record." *Ramos v. Colvin*, Civ.

No. 14-3971, 2016 WL 1270759, at *5 (D.N.J. Mar. 31, 2016) (citation and internal quotation marks omitted).

ALJ O'Leary also considered the state expert opinions of Dr. Flaherty and Dr. Pineiro, who found that Plaintiff could perform simple work, with Dr. Flaherty even suggesting that Plaintiff could resume work as an attorney. (Tr. 25-26, 78.) The ALJ was justified not only in assigning less weight to the treating physicians' opinions but also in assigning greater weight to the state agency physicians' opinions. *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). In affirming the ALJ's decision in *Chandler*, the Third Circuit noted that, as is the case here, the ALJ "did not merely rubber stamp" the state agency physicians' opinions but also added limitations that the state agency physicians did not deem necessary. *Id.* at 361-62.

Here, the ALJ's findings are supported by the substantial credible evidence. The record indicates, as described above, that although Plaintiff suffers from severe impairments, his impairments are not so severe as to prevent him from performing all work. "The presence of evidence in the record that supports a contrary conclusion does not undermine the Commissioner's decision so long as the record provides substantial support for that decision." *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009) (citation omitted). Here, ALJ O'Leary gave appropriate weight to the evidentiary record, treatment, and expert opinions, and to Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms. (Tr. 23, 28.) As a result, this Court finds that ALJ O'Leary properly analyzed the factual record and determined that Plaintiff met the definitional exertional requirements to perform sedentary work with some additional physical and mental limitations.

C.

Finally, Plaintiff argues that ALJ O'Leary's decision is not supported by the substantial credible evidence because it ignores VE Pearson's testimony that there are no jobs in the national economy that allow an individual to be off-task for 15 percent of the time or take off three or more days a month for medical reasons (D.E. 13 at 14–16.) However, the ALJ was not bound by VE Pearson's responses to hypotheticals that were not supported by the record. *See Hughes v. Comm'r Soc. Sec.*, 643 F. App'x 116, 120 (3rd Cir. 2016). The ALJ posed hypotheticals based on the established record and expanded on them to get a full understanding of the Plaintiff's ability to perform a job in the national economy. (Tr. 29, 68-71.) Because his RFC determination is supported by substantial credible evidence in the record, and the VE testified that occupations within that RFC exist in the national economy, the ALJ's conclusion that Plaintiff was not disabled during the relevant time period is supported by the substantial credible evidence.

## IV. CONCLUSION

For the foregoing reasons, this Court finds that ALJ O'Leary's factual findings were supported by substantial credible evidence in the record and his legal determinations were correct. Therefore, the Commissioner's determination is **AFFIRMED**. An appropriate order follows.

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig: Clerk
cc: Parties